FILED

JUNE 13, 2016

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time 12:57 PM



## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT JACKSON

| | | |
|---|---|---|
| SEVERIANO MENDEZ | ) | Docket No.: 2016-07-0055 |
| Employee, | ) | |
| v. | ) | State File Number: 42623-2015 |
| SERRA JACKSON AUTOMOTIVE | ) | |
| d/b/a SERRA CHEVROLET | ) | |
| CADILLAC BUICK GMC | ) | |
| Employer, | ) | Judge Amber E. Luttrell |
| | ) | |
| And | ) | |
| | ) | |
| TENNESSEE AUTOMOTIVE | ) | |
| ASSOCIATION SELF INSURER'S | ) | |
| TRUST | ) | |
| Insurance Carrier. | ) | |

## EXPEDITED HEARING ORDER DENYING REQUESTED MEDICAL BENEFITS

This matter came before the undersigned Workers' Compensation Judge on the Request for Expedited Hearing filed by the employee, Severiano Mendez, pursuant to Tennessee Code Annotated section 50-6-239 (2015). The issue before the Court is whether Mr. Mendez's current complaints and need for medical treatment arose primarily out of and in the course and scope of his work injury on October 30, 2014. For the reasons set forth below, the Court finds Mr. Mendez did not carry his burden of proving entitlement to the requested benefits at this time.[1]

### History of Claim

Mr. Mendez is a fifty-one-year-old resident of Madison County, Tennessee.[2] He is

---

[1] A complete listing of the stipulations, technical record, and exhibits admitted at the Expedited Hearing is attached to this Order as an appendix.

[2] Mr. Mendez requested and Serra provided a certified court interpreter for the Expedited Hearing. Mr. Hernan A. Silva-Zetina served as the interpreter during the hearing.

1

employed by Serra as a lot-porter. Mr. Mendez's job duties consist of washing cars, inspecting new cars, sweeping, and mopping. He testified, "I do a little bit of everything." Mr. Mendez slipped and fell on October 30, 2014, while walking through the service area where cars are washed. Mr. Mendez alleged injuries to his back, left elbow, left upper arm, and left hip. (T.R. 1 and Ex. 1.)[3]

Mr. Mendez reported the injury, and Serra provided him medical treatment at Physicians' Quality Care. On October 31, 2014, Mr. Mendez saw Dr. Peter Gardner and gave a history of his slip and fall injury the previous day. (Ex. 5.) He complained of pain in the left arm, elbow and low back. Upon physical examination, Dr. Gardner diagnosed an upper limb contusion and a lumbosacral sprain/strain. Mr. Mendez returned for follow up on November 10, 2014, and saw Dr. Keith Ellis. Dr. Ellis opined Mr. Mendez sustained a lumbosacral sprain, deltoid epicondylitis, and lateral (elbow) epicondylitis. He treated Mr. Mendez with an Ace wrap for his elbow and ordered physical therapy. Mr. Mendez completed physical therapy. *Id.*

Approximately seven months later, on June 15, 2015, Mr. Mendez returned to Physicians' Quality Care (PQC) and complained of ongoing back pain. He saw. Dr. Ellis in July and reported pain along the lower back on the right and left side without radiation. Based upon his ongoing symptoms and exam findings, Dr. Ellis referred Mr. Mendez for orthopedic evaluation.

Serra provided Mr. Mendez a panel of orthopedic physicians from which he selected Dr. Bradford Wright. (Ex. 3.) Mr. Mendez began treatment with Dr. Wright on August 21, 2015, for his back injury. (Ex. 5.) Following an exam, Dr. Wright diagnosed a low back strain. He opined Mr. Mendez, "appears to have congenital stenosis and after his fall he aggravated this condition. He does not have any evidence of radiculitis." *Id.* Dr. Wright ordered an MRI of the lumbar spine, which revealed an L3-4 retrolisthesis with stenosis. Dr. Wright further noted post-surgical changes and stenosis at L5-S1 and stenosis at L3-4. He stated Mr. Mendez, "had a previous laminectomy at L5-S1 in 2010 and has some stenosis associated with that also. I believe the L3-4 lesion is associated with the current trauma to the back. The L4-5 and L5-S1 problems are more likely than not associated with the previous injury and surgery." *Id.* Dr. Wright ordered physical therapy and a trial of lumbar epidural steroids.

On November 3, 2015, Dr. Wright noted Mr. Mendez experienced no significant change following therapy and injections; therefore, he referred Mr. Mendez to an orthopedic spine specialist. *Id.*

Based upon Dr. Wright's referral, Serrra provided Mr. Mendez a panel of

---

[3] Mr. Mendez did not testify regarding how he sustained his injury. The Court gleaned the facts concerning the injury from the PBD and Mr. Mendez's Affidavit.

neurosurgeons on November 12, 2015, from which he selected Dr. John Brophy for treatment. (Ex. 3.) Mr. Mendez saw Dr. Brophy on December 16, 2015. (Ex. 5.) Dr. Brophy took a history and noted Mr. Mendez's prior back injury and surgery in 2010. Mr. Mendez complained to Dr. Brophy of diffuse mid-lumbar pain and fatigue of the anterior thighs. He did not describe distal lower extremity radicular pain or weakness. Dr. Brophy reviewed the MRI results and noted a slight retrolisthesis at L3 or L4, but opined there was no evidence of HNP or nerve root compression. *Id.* Dr. Brophy further documented an extensive record review he performed of Mr. Mendez's prior treatment for his back dating back to 2008. Dr. Brophy diagnosed "chronic back pain associated with lumbar spondylosis without radiographic evidence of nerve root compression." *Id.* He noted, "the myofascial component related to his work injury has been appropriately treated." *Id.* Dr. Brophy further opined,

> Based on his ongoing symptoms, we reviewed the option of further evaluation through his personal insurance with lateral lumbar flexion/extension x-rays to rule out instability which would not be considered related to his work injury. He has declined these studies at this time. From the standpoint of his October 2014 work injury, he is cleared to return to work at full duty without restriction.

*Id.*

Serra's counsel sent correspondence to Dr. Brophy on April 11, 2016, concerning medical causation and providing Dr. Brophy with the statutory definition of "injury" set forth in Tennessee Code Annotated section 50-6-102(14) (2015). In response to questions posed to him, Dr. Brophy stated Mr. Mendez did sustain a work-related injury on October 30, 2014, diagnosed as "myofascial pain after a fall." (Ex. 9.) Dr. Brophy further opined Mr. Mendez has received appropriate and reasonable medical treatment for his injury consisting of physical therapy and anti-inflammatories. *Id.* Finally, Dr. Brophy opined there is no further medical treatment, including surgical intervention, that is reasonable or necessary for Mr. Mendez's work injury. *Id.* Dr. Brophy also completed a C-30A Form placing Mr. Mendez at maximum medical improvement (MMI) on December 16, 2015, for his work injury. He assigned no permanent impairment and no permanent restrictions. *Id.*

Mr. Mendez testified at the Expedited Hearing that he disagreed with Dr. Brophy's opinion and his back pain is worse. He stated his back is fine when he is at work. However, at home he experiences pain in his waist, legs, and inflammation behind his hips. He treats his symptoms with hot water, cold packs, and massage. Mr. Mendez testified he wants further treatment with Dr. Wright. He stated Dr. Wright informed him his spine was "twisted" causing nerve pain. Mr. Mendez testified Dr. Wright felt he needed surgery as evidenced by Dr. Wright's referral of him to a spine specialist.

3

Mr. Mendez testified his left shoulder is part of his claim. However, he stated he is requesting medical treatment for his back only.

On cross-examination, Serra's counsel questioned Mr. Mendez concerning his extensive history of prior work injuries, primarily to his back. The testimony from Mr. Mendez and the records admitted into evidence revealed, in part, the following pre-existing injuries and treatment for Mr. Mendez's back:

- May 31, 2003 back injury at Premier Manufacturing. Mr. Mendez treated with orthopedist, Dr. Lowell Stonecipher, for a diagnosis of slight degenerative disc at L5/S1. Mr. Mendez underwent significant conservative treatment for the injury through August 2005, when he attained maximum medical improvement (MMI). Mr. Mendez settled his workers' compensation claim in December 2005 and closed his right to future medical treatment. (Ex. 11.)

- May 17, 2006 back injury at Premier Manufacturing. Mr. Mendez treated conservatively with Dr. John Campbell and Dr. Bradford Wright for chronic thoracolumbar pain with MRI showing small right paracentral disc protrusion at L5/S1, which was abutting but not displaced or compressing the right S1 nerve. Mr. Mendez settled his workers' compensation claim in December 2007 and retained the right to lifetime future medicals for his injury. (Ex. 7.)

- July 1, 2008 back injury at Premier Manufacturing.[4] Mr. Mendez treated conservatively with Dr. Glenn Barnett, a neurosurgeon, for an L5 disc herniation on the right. Dr. Barnett ordered surgery, but it was denied. Mr. Mendez settled his workers' compensation claim in June 2013 on a doubtful and disputed basis. (Ex. 10.)

- December 17, 2010 back surgery at Laser Spine Institute in Tampa Florida. Mr. Mendez underwent surgery with the following procedures: "right L5/S1 L/F/DNR, foramenotomy, including partial facetectomy, with decompression of nerve root, with disc decompression, bilateral L4/5 destruction via thermal ablation of the paravertebral facet joints, and left L5/S1 destruction via thermal ablation of the paravertebral facet joint." (Ex. 8.)

On cross-examination, Mr. Mendez testified after his termination from Premier Manufacturing in December 2009, he was unable to work due to his back for a long period of time.[5] He continued seeking regular medical treatment for his back from

---

[4] The Court notes Mr. Mendez denied a new injury to his back on July 1, 2008. He testified he continued to have back symptoms from his 2005 injury. He stated his attorney at the time alleged a new injury on July 1, 2008, for which he reached a settlement in 2013.

[5] The Court notes the testimony was unclear if Mr. Mendez worked anywhere between December 2009 and when he began his employment at Serra on May 28, 2014.

different providers through May 21, 2014, seven days prior to starting his employment at Serra.

On August 13, 2014, Mr. Mendez sought treatment at Family Care Walk-In Clinic and was diagnosed with chronic low back pain. He was prescribed Tramadol. (Ex. 8.)

Mr. Mendez filed a Petition for Benefit Determination (PBD) seeking additional medical treatment for his back. The parties did not resolve the disputed issues through mediation, and the Mediating Specialist filed a Dispute Certification Notice (DCN). Mr. Mendez filed a Request for Expedited Hearing, and this Court heard the matter on May 11, 2015. At the Expedited Hearing, Mr. Mendez asserted he needs additional medical treatment with Dr. Wright for his back. Specifically, Mr. Mendez testified he needs back surgery.

Serra countered Mr. Mendez has an extensive pre-existing history of back injuries for which he closed out his right to future medicals in prior workers' compensation settlements. Serra specifically pointed out Mr. Mendez had prior MRIs, which indicated degeneration and broad-based annular disc bulging at L3/4, which is the same level for which Mr. Mendez now seeks additional treatment. Serra argued the medical evidence failed to establish Mr. Mendez needs any further medical treatment arising primarily out of his October 30, 2014 back injury. Serra further argued Dr. Brophy, the authorized treating physician, did not recommend any surgery or additional treatment for the work-related injury.

## Findings of Fact and Conclusions of Law

Mr. Mendez need not prove every element of his claim by a preponderance of the evidence at this Expedited Hearing stage in order to obtain relief. *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). However, he must come forward with sufficient evidence from which this court might determine he is likely to prevail at a hearing on the merits. *Id.*; Tenn. Code Ann. § 50-6-239(d)(1) (2015).

*Analysis*

The Court finds the controlling statute on the issue in this case is Tennessee Code Annotated section 50-6-102(14) (2015). It provides that to be compensable, Mr. Mendez must show his alleged injury arose primarily out of and in the course and scope of his employment. To do so, he must show his injury was caused by an incident, or specific set of incidents, identifiable by time and place of occurrence, and shall not include the aggravation of a preexisting condition unless it can be shown to a reasonable degree of medical certainty that the aggravation arose primarily out of and in the course and scope of employment. Tenn. Code Ann. § 50-6-102(14)(A) (2015). Further, he must show, "to a

5

reasonable degree of medical certainty that it contributed more than fifty percent (50%) in causing the . . . disablement or need for medical treatment, considering all causes." Tenn. Code Ann. § 50-6-102(14)(C) (2015). Moreover, "[t]he opinion of the treating physician, selected by the employee from the employer's designated panel of physicians . . . shall be presumed correct on the issue of causation but this presumption shall be rebuttable by a preponderance of the evidence." Tenn. Code Ann. § 50-6-102(14)(E) (2015).

Here, Mr. Mendez initially selected Dr. Wright from a panel of orthopedic physicians provided by Serra. After providing conservative treatment, Dr. Wright referred Mr. Mendez to a spine specialist. Accordingly, Serra provided Mr. Mendez a panel of neurosurgeons from which he selected Dr. Brophy. Under Tennessee Code Annotated section 50-6-102(14)(E) (2015), Dr. Brophy's causation opinion is presumed correct. Upon examining Mr. Mendez, reviewing his diagnostic studies, and reviewing his extensive pre-existing treatment records, Dr. Brophy opined Mr. Mendez sustained myofascial pain only from his work injury at Serra for which he received appropriate medical treatment and retained no permanent impairment. Also, Dr. Brophy opined no further medical treatment, including surgical intervention, is reasonable or necessary for Mr. Mendez's work-related injury. Finally, Dr. Brophy opined, "[B]ased on his ongoing symptoms, we reviewed the option of further evaluation through his personal insurance with lateral lumbar flexion/extension x-rays to rule out instability which would not be considered related to his work injury." (Ex. 5.)

Mr. Mendez disagrees with Dr. Brophy's opinions, arguing Dr. Wright opined he needs surgery for his work-related injury. The Court finds these contentions are insufficient to overcome the presumption of correctness afforded Dr. Brophy, and Mr. Mendez presented no expert medical evidence to support his contentions. Absent a contrary medical opinion, Mr. Mendez cannot rebut the presumption of correctness afforded Dr. Brophy's opinion by the Workers' Compensation Law. *Scott v. Integrity Staffing Solutions*, No. 2015-01-0055, 2015 Tn. Wrk. Comp. App. Bd. LEXIS 24, at *8 (Tenn. Workers' Comp. App. Bd. Aug. 8, 2015).

Therefore, as a matter of law, Mr. Mendez has not come forward with sufficient evidence from which this Court may conclude he is likely to prevail at a hearing on the merits. The Court must deny his request for medical benefits at this time.

**IT IS, THEREFORE, ORDERED** as follows:

1. Mr. Mendez's claim against Serra and its workers' compensation carrier for the requested medical benefits is denied at this time.

2. This matter is set for an Initial (Scheduling) Hearing on August 8, 2016, at 9:00 a.m. Central time.

**ENTERED** this the 13th day of June, 2016.

*[signature]*

**Judge Amber E. Luttrell**
**Court of Workers' Compensation Claims**

Initial (Scheduling) Hearing:

An Initial (Scheduling) Hearing has been set with **Judge Luttrell, Court of Workers' Compensation Claims. You must call 731-422-5264 or toll-free at 855-543-5039 to participate in the Initial Hearing.**

**Please Note: You must call in on the scheduled date/time to participate. Failure to call in may result in a determination of the issues without your further participation.**

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying

7

the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within five business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

# APPENDIX

## Stipulations of the Parties:

1. The date of injury is October 30, 2014.

2. Mr. Mendez did not miss any work as a result of the October 30, 2014 work injury. Therefore, no temporary disability benefits are due.

3. Mr. Mendez received authorized medical treatment from Physicians' Quality Care, Dr. Bradford Wright, and Dr. John Brophy.

## Exhibits:
1. Affidavit of Severiano Mendez
2. First Report of Work Injury
3. C-42 Panel of Physicians
4. Wage Statement
5. Collective medical records admitted by Mr. Mendez of the following providers:
   a. Physicians' Quality Care
   b. Sports Orthopedic and Spine (Dr. Wright)
   c. Family Care Walk-In Clinic
   d. Sports Orthopedic and Spine Physical Therapy
   e. Semmes-Murphey Clinic (Dr. Brophy)
6. Mr. Mendez's Serra application of employment
7. Prior Workers' Compensation Settlement Documents
8. Serra's Exhibit List containing medical records
9. Serra's Supplemental Exhibit List

## Technical Record:[6]
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing
4. Employer's Position Statement
5. Mr. Silva-Zetina's Certified Spanish Court Interpreter Certificate

---

[6] The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

9

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 13th day of June, 2016.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|---|---|---|---|---|
| Severiano Mendez, Self-represented Employee | X | | X | 79 Edgehill Dr. Jackson, Tennessee 38301; jmarygtez@charter.net |
| Jennifer Orr-Locklin, Esq., Employer's Counsel | | | X | Jennifer.locklin@farrar-bates.com; Rebecca.mcfadden@farrar-bates.com |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov

10